IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MOISES L. TORRES and | § | |
| IRMA TORRES, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. 1:10-CV-000200 |
| | § | |
| LLOYD'S OF LONDON | § | |
| SYNDICATE #4242, ICAT | § | |
| MANAGERS, LLC, BASS | § | |
| BASS UNDERWRITERS, INC., | § | |
| BOULDER CLAIMS, LLC, and | § | |
| CYNTHIA AMZIBEL, | § | |
| | § | |
| Defendants. | § | |

### OPINION AND ORDER

BE IT REMEMBERED, that on December 14, 2011, the Court **CONSIDERED** Defendants' Motion to Strike Plaintiffs' Expert Witnesses, Dkt. No. 24, Plaintiffs' Motion for Leave to File Amended Expert Designation, Dkt. No. 29, Plaintiffs' second Motion for Leave to File Amended Expert Designation, Dkt. No. 31, Defendants' Motion for Summary Judgment, Dkt. No. 25, and Plaintiffs' Motion to Compel, Dkt. No. 33.

This is an insurance claim dispute arising out of the damage allegedly caused to Plaintiffs' property in Cameron County, Texas, ("the Property") by Hurricane Dolly which struck the region on or about July 23, 2008. Dkt. No. 1. On July 22, 2010, Plaintiffs filed this lawsuit in the 103rd Judicial District Court of Cameron County, Texas, alleging causes of action for breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, fraud and conspiracy to commit fraud against Defendants Lloyd's of London Syndicate 4242 ("Syndicate 4242"), ICAT Managers, LLC ("ICAT"), Bass Underwriters, Inc. ("Bass"), Boulder Claims, LLC ("Boulder") and Cynthia Amzibel ("Amzibel"). *Id.*

I.   **Background**

Plaintiffs are the insureds in a Named Peril Commercial Property Policy, number 42-7560010921-L-00 ("the Policy"), which insures the Property against direct physical loss or

damage caused by wind and hail. While the parties agree that Syndicate 4242 is an insurance carrier and party to this contract, the parties dispute whether ICAT and Bass are parties to this insurance contract.

On May 14, 2010, Plaintiffs filed a claim for wind damage to the Property and reported cracks in the stucco on the front of the Property believed to be caused by wind damage suffered during Hurricane Dolly. Boulder is the representative of Syndicate 4242 which investigates and handles claims for certain policies issued by Syndicate 4242. Amzibel is a Senior Claims Examiner for Boulder and was assigned to handle Plaintiffs' claim. On May 17, 2010, Amzibel retained GAB Robins, N.A. ("GAB"), an independent adjuster, to inspect the Property. Dkt. No. 25, Ex. B. Also on May 17, 2010, Amzibel sent a letter to Plaintiffs acknowledging receipt of their claim, informing them she would be handling their claim, providing them with contact information to discuss their claim with her, and informing them that GAB had been assigned to meet with Plaintiffs and inspect the Property. Dkt. No. 25, Ex. B-1. On May 18, 2010, Amzibel spoke with Plaintiff Irma Torres and informed her that an independent adjuster from GAB and an engineer would inspect the Property. Dkt. No. 25, Ex. B.

On May 19, 2010, Joe Mota ("Mota") from GAB inspected the Property but did not climb on the roof. Dkt. No. 32, Ex. C-1. On May 20, 2010, Mota prepared his first report stating that he expected to return to examine the roof. *Id.* Also on May 20, 2010, Amzibel retained PT&C Forensic Consulting Services, P.A. ("PT&C"), an engineering firm, to inspect the Property. Dkt. No. 25, Ex. B. On May 25, 2010, Mota and Jeff Foster ("Foster"), an engineer with PT&C, inspected the Property. Also on May 25, 2010, Amzibel sent Plaintiffs a letter informing them that the investigation had begun, that their claims might not be covered by Syndicate 4242, and reserving Syndicate 4242's rights under the Policy. Dkt. No. 32, Ex. E. On June 3, 2010, Mota prepared his second report stating that he had inspected the roof and did not observe any creases on the shingles or any other damage. Dkt. No. 32, Ex. C-1. Mota concluded that the cracks in the stucco "were probably caused by expansion and contraction." *Id.* On June 7, 2010, Foster submitted his report to Amzibel and concluded that the cracks in the stucco were not the result of Hurricane Dolly or any other single weather event but were likely "long-term expansion and contraction of construction materials or construction deficiencies during the original installation

of the stucco." Dkt. No. 25, Ex. B-2. Foster's report further found that there were "no missing, creased, or torn shingles on the composition shingle roof . . . ." *Id.* On June 21, 2010, Mota provided a third report stating that he had reviewed the engineer's report and noting that the engineer concluded that there was no wind damage to the roof or the walls of the Property. Dkt. No. 32, Ex. C-3. On June 22, 2010, after reviewing the reports from Mota and Foster, Amzibel attempted to contact Plaintiffs by telephone and sent Plaintiffs a letter explaining that Syndicate 4242 had decided to deny Plaintiffs' claim. Dkt. No. 25, Ex. B, B-3. Amzibel's letter included the relevant wind and hail damage portion of the Policy, explained that Syndicate 4242's investigation concluded that the damage to the stucco was not the result of wind, and included Foster's engineering report. Dkt. No. 25, Ex. B-3.

At some point prior to November 18, 2010, Plaintiffs' counsel retained Nelson Jones, an engineering firm, to inspect the Property. On November 18, 2010, Carlos Flores ("Flores") from Nelson Jones performed the inspection and Peter Rabner ("Rabner") supervised and signed Flores' report. Dkt. No. 32, M-3. The report signed by Rabner and Flores was provided to Plaintiffs' counsel on December 31, 2010, and concluded that the Property sustained damage consistent with a hurricane including "water damage to interior architectural finishes, wind damage to exterior architectural finishes, roof membrane damage, and fence damage." Dkt. No. 32, Ex. M, M-3. Flores conducted a visual assessment of the Property, including the roof, and took numerous photographs and the report included weather reports from the time of Hurricane Dolly. Dkt. No. 32, Ex. M-3.

## II. Defendants' Motion to Strike Plaintiffs' Expert Witnesses and Plaintiffs' Motions for Leave to Amend Expert Designations

The Court's Scheduling Order initially required Plaintiffs to file their expert witness list accompanied with expert reports by July 13, 2011. Dkt. No. 8. The Court subsequently granted the parties' Joint Motion for Modification of Expert Designation and Mediation Deadlines and ordered Plaintiffs' expert witness list and expert reports due July 19, 2011. Dkt. No. 16. On July 22, 2011, Plaintiffs provided their expert witness list to Defendants including the following experts: (1) Rene Sigman, to testify as to attorney's fees; (2) Randy Cashiola, to testify as to attorney's fees; (3) Gary Kronrad ("Kronrad"), to provide economic expertise; (4) Nancy

Wurzman ("Wurzman"), to provide expert testimony as to Defendants' bad faith; (5) Darrel Quinney ("Quinney") and James Wesselski ("Wesselski"), to testify as to the damage to the Property; and (6) Rick Nelson ("Nelson"), to testify as to Plaintiffs' damages. Plaintiffs included the curriculum vitae of each of the experts and the expert reports of Quinney, Wesselski, and Nelson. Inadvertently, the report allegedly provided by Nelson was actually the report produced by Flores and signed by Rabner. On September 12, 2011, Plaintiffs provided their second amended expert witness list with the following changes: substituting Kent Chambers ("Chambers") for Wurzman, providing Chambers' curriculum vitae, and including the expert report of Kronrad.

On September 20, 2011, Defendants filed their Motion to Strike Plaintiffs' Expert Witnesses arguing that all of Plaintiffs' expert designations were made outside of the deadline set by the Court's Order and therefore should be struck. Dkt. No. 24. Alternatively, Defendants request the Court strike Chambers and Kronrad because Plaintiffs did not provide their reports until September 12, 2011, over two months after the deadline for expert reports. On October 10, 2011, Plaintiffs responded arguing that although their initial expert witness list and accompanying reports was filed two days late, the opposing parties were not prejudiced and therefore their motion should be denied. Dkt. No. 30. Also on October 10, 2011, Plaintiffs filed their Amended Motion for Leave to Amend Expert Witnesses Designation, Dkt. No. 29, and requested the Court permit them leave to amend their expert witness designations to include the expert report of Chambers. On October 20, 2011, Plaintiffs filed their second Motion for Leave to Amend Expert Designations, Dkt. No. 31, requesting the Court permit them to amend their expert designations to add Rabner as an engineering expert. Defendants did not file responses to these requests.

Pursuant to Federal Rule of Civil Procedure 26(a), parties are required to disclose any expert witnesses and provide reports from those expert witnesses "at the times and in the sequence that the court orders" or if there is no court order then "at least ninety days before the date set for trial . . . ." FED. R. CIV. P. 26(a)(2)(D). The expert reports are required to include the witness' opinions, facts or data considered by the witness in forming his opinions, any exhibits to support the witness, the witness' qualifications with all publications authored in the previous ten

years, a list of all other cases in which the witness has testified as an expert within the last four years, and a statement of the compensation to be paid to the witness. FED. R. CIV. P. 26(a)(2)(B). The parties are required to supplement these disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect . . . ." FED. R. CIV. P. 26(e)(1)(A). Federal Rule of Civil Procedure 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c).

The Court finds that Plaintiffs' error in providing their original expert witness list and reports three days late was harmless. Defendants filed their Motion to Strike asserting that Plaintiffs' disclosures were untimely two months after Plaintiffs provided the disclosures and after Plaintiffs provided their second amended expert disclosures. The Court finds that Defendants did not suffer any harm from Plaintiffs' expert disclosures being three days late and did not promptly raise the issue with the Court. The Court finds that Plaintiffs' original disclosures included much of the information required by Federal Rule of Civil Procedure 26(a)(2) in the form of summaries of the testimony expected from each expert, curriculum vitaes for each expert, and three of the experts' full reports. Although Plaintiffs did not immediately provide all of the experts' full reports, the Court finds this error was also harmless.

Plaintiffs' September 12, 2011, amended disclosures supplement their original disclosures to include the full expert report of Kronrad and to substitute Chambers for Wurzman. Although Chambers was added as a new expert two months after the initial expert disclosure deadline, the summary of his expected testimony is similar to that of Wurzman. Plaintiffs also provided Chambers' curriculum vitae in their September 12, 2011, amended disclosures. Again, the Court finds that Defendants have not been harmed by Plaintiffs' supplement, especially given the curriculum vitaes and the summaries of the testimony of the experts provided by Plaintiffs with their initial disclosures.

Last, the Court finds that Plaintiffs' two Motions for Leave to Amend Expert Designations, Dkt. Nos. 29, 31, further supplement Plaintiffs' original expert designations. Plaintiffs' October 10, 2011, Motion for Leave to Amend Expert Witnesses Designation, Dkt.

No. 29, provides the full expert report of Chambers. Plaintiffs' October 20, 2011, Motion for Leave to Amend Expert Designations corrects the original expert disclosure to include Rabner, whose signature is on the report provided by Nelson Jones. Both of these motions, and all supplements, were provided more than ninety days before the case is set for trial and comply with Federal Rule of Civil Procedure 26(e). There is no evidence that Defendants will be harmed by these supplements. Therefore, the Court **DENIES** Defendants' Motion to Strike and **GRANTS** Plaintiffs' Motion for Leave to Amend Expert Witness Designation, Dkt. No. 29, and Plaintiffs' Motion for Leave to Amend Expert Designations, Dkt. No. 31.

### III. Defendants' Motion for Summary Judgment

On September 30, 2011, Defendants moved for summary judgment on all claims brought by Plaintiffs except their claim for breach of contract against Syndicate 4242. Dkt. No. 25. Defendants argue that (1) ICAT and Bass are not parties to the insurance contract; (2) Syndicate 4242, ICAT, and Bass did not breach the duty of good faith and fair dealing because they had a reasonable basis for denying Plaintiffs' claim; (3) Syndicate 4242, ICAT, and Bass did not violate the Texas Insurance Code; and (4) Syndicate 4242, ICAT, Bass, Boulder, and Amzibel did not commit fraud or conspiracy to commit fraud because they did not make any material misrepresentation on which Plaintiffs relied which resulted in Plaintiffs suffering harm; and there was no agreement among Defendants to commit fraud. On October 20, 2011, Plaintiffs filed their response initially requesting a continuance to permit further discovery and further arguing that they have presented evidence that raises a genuine issue of material fact as to each of their claims.

*A. Summary Judgment Standard*

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; see also *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993). The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

### B. Plaintiffs' Request for Continuance

In their response to Defendants' Motion for Summary Judgment, Plaintiffs first request a continuance. Plaintiffs do not specify what deadlines they wish to extend other than their response to Defendants' motion, nor do they specify how long of a continuance they request. Nonetheless, Plaintiffs argue that they are unable to fully respond to Defendants' motion because they have not completed discovery. The Court understand this to be a request for a continuance under Federal Rule of Civil Procedure 56(d).

Rule 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Motions under Rule 56(d) are "viewed favorably and liberally granted." *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001). In order to be entitled to a continuance under Rule 56(d), a party must show why it needs the additional discovery and how the discovery will create a genuine issue of material fact. *Six Flags, Inc. v. Westchester Surplus Lines, Inc.*, 565 F.3d 948, 963 (5th Cir. 2009); *Beattie*, 254 F.3d at 605. "Once the party has demonstrated that diligent efforts to obtain the discovery have been unsuccessful, a [Rule 56(d)] motion 'should be granted almost as a matter of course.'" *Johnson v. CDI Corp.*, 2009 WL 6443118, at *4 (S.D. Tex. Sept. 8, 2009) (quoting *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d

1257, 1267 (5th Cir. 1991) (internal citations omitted); *Adams v. Travelers Indent. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (denying a Rule 56(f) motion because the summary judgment non-movant failed to diligently pursue the evidence within the time allotted for a previous continuance)).

This Court issued a Scheduling Order on December 28, 2010, setting the discovery deadline as September 12, 2011, and the dispositive motion deadline as September 30, 2011. Dkt. No. 8. The Court's Scheduling Order specifically states that "[c]ounsel may agree to continue discovery beyond the deadline, but there will be no intervention by the court. No continuance will be granted because of information acquired in post-deadline discovery." On June 14, 2011, the Court struck two letters of agreement in which the parties had agreed to extend deadlines in the scheduling order and abate discovery. The Court reminded the parties that changes to the scheduling order required Court approval, including any extensions to the discovery deadline that would interfere with the trial or other deadlines. While the parties may agree to continue discovery beyond the deadline of September 12, 2011, the Court has made it abundantly clear that it will not become involved in post-deadline discovery disputes and that the parties' agreements will not affect the Court's schedule. Plaintiffs' request for a continuance is based on the fact that, by agreement, the parties have not completed discovery at this time. Furthermore, Plaintiffs' request for a continuance was made only after the discovery deadline and the dispositive motion deadline had passed. Plaintiffs have failed to show that they have made diligent efforts to complete the discovery during the time allotted by the Court. Therefore, the Court **DENIES** Plaintiffs' request for a continuance.

C. *Breach of Contract Claims*

Defendants move for summary judgment on Plaintiffs' breach of contract claims against ICAT and Bass, but not Syndicate 4242. Defendants argue that only Syndicate 4242 is a party to the Policy and is the only Defendant potentially liable for breach of contract. Plaintiffs respond that ICAT and Bass are on the Policy and therefore are parties to the contract.

Defendants presented a copy of the Policy which shows that ICAT is the "Correspondent" and Bass is the "Producer." The Policy specifically provides that the Correspondent is not an insurer and "shall [not] be liable for any loss or claim whatsoever." Dkt. No. 25, Ex. A. The

Policy further identifies Lloyd's of London, Syndicate 4242 as the underwriter and the entity liable on the Policy. *Id.* Plaintiffs have not presented any other contracts which they assert have been breached by ICAT or Bass. Plaintiffs argue that it is their belief that ICAT and Syndicate 4242 are the same entity and that Plaintiffs have requested a continuance to conduct discovery on this issue and on whether Bass is in fact only a Producer. On a motion for summary judgment, the non-movant may not rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Plaintiffs' assertions that they believe Syndicate 4242 and ICAT are the same entity and that they believe Bass is more than just a Producer are insufficient to raise a genuine issue of material fact. Furthermore, to the extent Plaintiffs needed more time for discovery on these points, Plaintiffs should have requested a continuance before the discovery and dispositive motion deadlines passed. Based on the Policy provided, the Court concludes that Syndicate 4242 is the only entity liable under the Policy and the only entity that can be liable for breaching the Policy.

### D. Duty of Good Faith and Fair Dealing

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Automobile Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). The Texas Supreme Court has explained that the common law standard for establishing a breach of the duty of good faith and fair dealing coincides with the statutory bad faith standard. *Universe Life Insurance Co. v. Giles*, 950 S.W. 2d 48 (Tex. 1997). To prove that an insurer acted in bad faith, an insured must show that the insurer failed to settle the claim even though it "knew or should have known that it was reasonably clear that the claim was covered." *Id.* at 54-55; see also TEX. INS. CODE § 541.060(a)(2)(A) (providing that it is an unfair settlement practice for an insurer to "fail[ ] to attempt in good faith to effectuate a prompt, fair and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear . . . ."); TEX. INS. CODE § 541.060(a)(7) (providing that it is an unfair settlement practice for an insurer to "refuse[ ] to pay a claim without conducting a reasonable investigation with respect to the claim . . . .").

"Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17

9

(Tex. 1994). However, relying solely on an expert's report will not shield the insurer from bad faith liability "if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). An investigation is not reasonable if the insurer conducts it "in a manner designed, not to discover the objective facts, but only to defeat coverage." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 47 (Tex. 1998). In determining the reasonableness of an insurer's decision a court reviews the facts that were available to the insurer at the time of denial. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). "If nothing is presented suggesting that the evidence upon which the insurer relied was obtained in an unobjective or unfair manner and if that evidence, viewed in isolation, reasonably suggests that the insured's claim is invalid or questionable, the insurer's basis is reasonable as a matter of law." *Thompson v. Zuric American Ins. Co.*, Civ. No. A-09-CA-493-SS, 2010 WL 3784204, at *5 (W.D. Tex. Sept. 21, 2010) (citing *Lyons v. Immers Casualty Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993)).

Defendants argue that they reasonably relied on the reports of Mota and Foster in denying Plaintiffs' claim and that these reports, at the very least, raise a bona fide dispute as to Defendants' liability. Dkt. No. 25. Plaintiffs contend that (1) the reports of Mota and Foster were biased and erroneous; (2) Defendants knew that the reports were biased and erroneous; and (3) evidence of the wind damage to the Property was obvious. Dkt. No. 32. Plaintiffs argue that in the face of these facts, Defendants knew or should have known that their liability was reasonably clear. *Id.*

The Texas Supreme Court in *Nicolau* affirmed the jury's finding that an insurer acted in bad faith when it denied the insureds' claim brought under their homeowners' insurance policy. 951 S.W.2d 444. In *Nicolau*, the plaintiffs discovered damage to their home, hired an engineer to examine it and, upon the engineer's report that the damage was caused by leaking plumbing, sought coverage for extensive foundation damage. *Id.* The insurer denied coverage on the grounds that the insurer's two experts examined the home and concluded that the damage was caused by an uncovered event. *Id.* The Court concluded that there was "some evidence" that the insurer knew or should have known that it was reasonably clear that the insured's claim was covered. *Id.* at 447. The Court based its decision on evidence presented that showed that the

insurer chose its experts because it knew they tended to reach a result favorable for the insurer and that, in light of the conflicting reports presented by the plaintiffs' experts, the reliance on the insurer's experts was pretextual. *Id.* at 448.

The facts present at the time Defendants denied Plaintiffs' claims in this action differs markedly from the facts present in Nicolau. Defendants hired an independent adjuster and an independent engineer to inspect the Property. Mota inspected the Property on two separate occasions, took photographs, and prepared reports for each visit. Foster also inspected the Property and took photographs and both individuals examined the roof by getting on the roof. Foster prepared a detailed report including examining the weather patterns that existed in the area at the time of Hurricane Dolly. Foster concluded that, based on his physical observations, the damage to the Property was not consistent with wind damage and most likely resulted from expansion and contraction over time and/or poor original construction. Mota concluded, based on his observations and his review of Foster's report, that the damage was not the result of wind. At the time Defendants made the decision to deny Plaintiffs' claim, these were the only two reports available.

Plaintiffs argue that the reports of Mota and Foster were biased and that Defendants were aware of this bias and therefore could not reasonably rely on these reports. In *Nicolau*, the plaintiffs had evidence that the insurer chose its experts because the insurer knew the experts would provide favorable reports. 951 S.W.2d at 449. Plaintiffs have not presented any evidence even remotely similar in this case. Plaintiffs assert that if they were given more time in discovery, they would "uncover a lengthy and extensive relationship between Defendants and their hired experts and reveal several outcome oriented investigations by these experts in favor of Defendants." Dkt. No. 32 at 11. However, as the Court explained, *supra* section III.B, Plaintiffs did not request an extension to the discovery deadline and the Court will not be bound by the parties' agreements. Furthermore, at this time, over two months after Defendants filed their Motion for Summary Judgment, Plaintiffs have not presented any such evidence. In *Nicolau*, the plaintiffs presented evidence that the experts hired by the insurer reached conclusions favorable to an insured, i.e., that damage to a foundation was the result of a covered event, in only two out of eighty or ninety cases and in those two cases the individual engineers never worked on a

foundation case again. 951 S.W.2d at 449. Plaintiffs' claim that they could, if given more time and discovery, present evidence of "several" investigations with similar outcomes is insufficient to raise a genuine issue of material fact as to the reasonableness of Defendants' investigation.

Plaintiffs further assert that the reports of Mota and Foster were erroneous because there was clear wind damage to the roof of the Property. Plaintiffs present the affidavit of Rabner of Nelson Jones to support their allegations. Dkt. No. 32, Ex. M. Nelson Jones inspected the Property on November 18, 2010, approximately five months after Defendants denied Plaintiffs' claim. The report provided by Nelson Jones includes numerous photographs of the Property and a weather report from the time of Hurricane Dolly's landfall and concludes that significant damage to the Property, such as interior water damage, damage to exterior architectural finishes, roof damage and fence damage, were the result of "hurricane-related distress." Dkt. No. 32, Ex. M-3. While Plaintiffs present evidence of damage to the Property, it is insufficient to raise a genuine issue of material fact as to whether Defendants were reasonable in relying on the reports of Mota and Foster. At the time Defendants denied Plaintiffs' claim, they only had the reports of Mota and Foster on which to rely. The mere fact that Plaintiffs' report and Defendants' reports conflicted does not mean Defendants must affirm coverage. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994); *Connolly v. Service Lloyds Ins. Co.*, 910 S.W.2d 557, 561 (Tex.App.-Beaumont 1995) ("A disagreement among experts as to whether the cause of the loss is one covered by the policy will not support a judgment for bad faith."). An insurer can deny questionable claims without being liable for bad faith. *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex.App.-Dallas 2005) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)).

Plaintiffs also allege that the reports of Mota and Foster are erroneous because an Official Order of the Commissioner of Insurance of the State of Texas (the "Commissioner") found that a shingle may be "unsealed," constituting a direct physical loss under a windstorm policy, even where the shingle does not "exhibit visible creases, cracks, rips or tears." Order of Commissioner of Insurance, No. 11-0587, July 15, 2011, Dkt. No. 32, Ex. K. However, this order has no effect in this case. First, it was issued in July of 2011, over a year after Defendants denied Plaintiffs' claim and therefore could not have provided any guidance to Defendants.

Second, it is a consent order and the Commissioner did not make a ruling on the facts or any relevant law. Plaintiffs cite an agreement by the parties to the case before the Commissioner, not a ruling, holding or finding of the Commissioner. Plaintiffs have not presented competent summary judgment evidence that the reports relied upon by Defendants were not objectively prepared or that Defendants' reliance on them was unreasonable, or any evidence from which it could be inferred that Defendants knew or should have known that they acted unreasonably in denying Plaintiffs' claim.

### E. *Texas Insurance Code Claims*

#### 1. *Section 541.060(a)(1)*

Section 541.060(a)(1) of the Texas Insurance Code states that an insurer violates the code by "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue . . . ." Defendants argue that they did not make any material misrepresentations. Dkt. No. 25. Plaintiffs argue that Defendants' statements that the damage was not caused by wind and therefore was not covered under the Policy was a material misrepresentation. Dkt. No. 32. However, there is no evidence of a material misrepresentation in the record. As explained above, Defendants had a reasonable basis for determining that the damage to the Property was not caused by wind and was instead caused by events not covered by the Policy. Thus, a reasonable juror could not conclude that Syndicate 4242's denial of Plaintiffs' claim constitutes a misrepresentation. *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 824 (S.D. Tex. Feb. 28, 2011).

#### 2. *Section 541.060(a)(3)*

Section 541.060(a)(3) of the Texas Insurance Code states that an insurer violates the code by "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim . . . ." Defendants argue that they have not violated this provision because Amzibel provided Plaintiffs with a letter explaining the basis of Syndicate 4242's decision to deny Plaintiffs' claim on June 22, 2010, which included reference to the relevant policy provisions and provided Plaintiffs with a copy of Foster's report. Dkt. No. 25. Plaintiffs do not address this claim in their response to Defendants' Motion for Summary

Judgment. Based on the evidence presented by Defendants, the Court finds that no genuine issue of material fact exists as to this claim.

### 3. Section 541.060(a)(4)

Section 541.060(a)(4) of the Texas Insurance Code states that an insurer violates the code by "failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder . . . ." Defendants argue that they did not violate this section because they denied Plaintiffs' claim within thirty-nine days of Plaintiffs filing their claim. Dkt. No. 25. Plaintiffs argue that because Defendants should have affirmed coverage of the claim, they have violated this section of the Texas Insurance Code. Dkt. No. 32. However, Plaintiffs do not present any evidence that Defendants failed to affirm or deny coverage within a reasonable time. Although Plaintiffs' disagree with Syndicate 4242's decision to deny coverage, Defendants communicated with Plaintiffs promptly, initiated their investigation within a week of receiving Plaintiffs' complaint, and informed Plaintiffs of their decision to deny coverage within two weeks of receiving the final report from their investigators. Thus, the evidence does not show that Defendants unreasonably delayed in affirming or denying coverage. *See Lee*, 766 F. Supp. 2d at 824-25 (concluding that the insurer did not fail to promptly make a decision regarding the plaintiff's claim).

### F. Prompt Payment of Claims

#### 1. Section 542.055

Section 542.055 of the Texas Insurance Code provides that an insurer shall (1) "acknowledge receipt of the claim," (2) "commence any investigation of the claim," and (3) "request from the claimant all items, statements and forms that the insurer reasonably believes, at that time, will be required from the claimant" within fifteen days of receiving notice of the claim. TEX. INS. CODE § 542.055. Defendants argue that they promptly acknowledged receipt of Plaintiffs' claim, began the investigation, and contacted the Plaintiffs regarding their claim. Dkt. No. 25. Plaintiffs respond that Defendants could not have complied with the Prompt Payment of Claims portion of the Texas Insurance Code when they have not yet paid the claim. Dkt. No. 32.

Defendants received notice of the claim on May 14, 2010, and acknowledged receipt on May 17, 2010. Amzibel retained GAB on May 17, 2010, spoke with Plaintiff Irma Torres on May 18, 2010, and retained PT&C on May 20, 2010. Mota and Foster conducted their on-site

inspections of the Property on May 19, 2010, and May 25, 2010. Amzibel made further contact with Plaintiffs on May 25, 2010, and after receiving all reports from Mota and Foster by June 21, 2010, informed Plaintiffs that Syndicate 4242 would be denying their claim and the basis for that denial on June 22, 2010. Defendants never requested forms, statements, or other information from Plaintiffs except the information sought in the interviews conducted by Mota and Foster. Thus, the evidence shows that Defendants complied with Section 542.055 by acknowledging receipt of the claim, commencing the investigation, and gathering necessary statements from the Plaintiffs through their investigators all within fifteen days of receipt of the claim.

### 2. Section 542.056

Section 542.056 of the Texas Insurance Code provides that an insurer must notify a claimant in writing of the acceptance or rejection of a claim and the underlying reasons for its decision within fifteen business days of receiving all items, statements and forms that are required for the insurer to secure final proof of loss. TEX. INS. CODE § 542.056(a) and (c). Defendants argue that they complied with this section by notifying Plaintiffs of the denial of their claim within fifteen business days of receiving the final reports of Mota and Foster. Dkt. No. 25. Plaintiffs respond that Defendants violated this section because they still have not accepted the claim. Dkt. No. 32.

Foster provided his final report to Amzibel on June 7, 2010, and Mota provided his final report to Amzibel on June 21, 2010. Amzibel attempted to contact Plaintiffs via telephone on June 22, 2010. After she was unable to reach them, she sent a letter to Plaintiffs dated June 22, 2010, which provided notice to Plaintiffs that Syndicate 4242 was denying their claim, referenced the relevant sections of the Policy, included a copy of Foster's report, and further explained the reason that Syndicate 4242 was denying their claim. The plain language of Section 542.056 requires that the insurer notify the insured of the acceptance or rejection of the claim within fifteen business days of receiving all items, statements and forms that are required for the insurer to make its final decision. Amzibel sent Plaintiffs a letter within fifteen business days of receiving the reports of Foster and Mota, items required to make the final decision, and her letter clearly notified Plaintiffs of the rejection of their claim and the underlying reasons for Syndicate 4242's decision. Plaintiffs have not raised a genuine issue of material fact as to this claim.

### 3. Section 542.058

Section 542.058 of the Texas Insurance Code provides that an insurer is liable for statutory damages if, after receiving all items, statements, and forms reasonably requested and required, it delays payment of the claim for a period exceeding the period specified by other applicable statutes, or if other statutes do not specify the period, for more than sixty days. Tex. Ins. Code § 542.058(a). Defendants argue that summary judgment should be granted as to this claim. Dkt. No. 25. Plaintiffs respond that Defendants have violated this section because they have not yet paid the claim. Dkt. No. 32.

Defendants do not move for summary judgment on Plaintiffs' claim that Syndicate 4242 breached its contract by denying Plaintiffs' claim under the Policy. A determination as to whether Syndicate 4242 wrongfully delayed payment is dependent on the unresolved issue of whether Syndicate 4242 is liable under the policy. *Lee*, 766 F. Supp. 2d at 826-27. Therefore, the Court finds that a genuine issue of material fact exists as to whether Syndicate 4242 is liable for violating Section 542.058 of the Texas Insurance Code. However, as the Court determined, *supra* section III.C, ICAT and Bass are not insurers on the Policy and thus are not liable for violating the Texas Insurance Code.

### G. Fraud and Conspiracy to Commit Fraud

Under Texas law, a plaintiff must prove the following elements to prevail on a fraud claim: (1) the defendant made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) it intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (quoting *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)); *see also Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 832 (S.D. Tex. 2010). "The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a proximate result." *First State Bank of Mesquite v. Bellinger & DeWolf, LLP*, 342 S.W.3d 142, 150 (Tex.App.-El Paso 2011) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d

854, 857 (Tex. 1968)). Civil conspiracy requires "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Id.* (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)).

  Defendants argue that Plaintiffs have no evidence (1) of any false representations made by any Defendant; (2) that any false representation was made knowingly or with reckless disregard for the truth and as a positive assertion; (3) that Defendants made any representation with the intent that Plaintiffs act on it; (4) that Plaintiffs acted on a representation made by Defendants and suffered damages; or (5) that Defendants agreed to commit fraud. Dkt. No. 25. Plaintiffs respond that Defendants misrepresented the condition of the Property by relying on the reports of Mota and Foster and concluding that the Property did not suffer any wind damage from Hurricane Dolly. Dkt. No. 32. Plaintiffs argue that Defendants knew that their statements denying coverage were false and Plaintiffs relied to their detriment on these statements because they have been unable to repair the Property. Plaintiffs argue that Defendants were aware at the time of the inspection of the Property that the basis for Foster's conclusion that there was no wind damage to the roof was unreliable because of the decision by the Commissioner. Thus, Plaintiffs argue that Defendants conspired together to deny Plaintiffs' claim in spite of the ruling by the Commissioner. Plaintiffs further argue that, if given more time, they could "discover the nature, length and extent between Defendants and their hired experts" that "will lead to admissible evidence of an agreement between Defendants to commit fraud and perform outcome oriented investigations in favor of Defendants." Dkt. No. 32 at 21.

  As the Court noted, *supra* section III.D, the decision by the Commissioner was issued over a year after Foster and Mota wrote their reports and Syndicate 4242 denied Plaintiffs' claim. Furthermore, as the Court found, *supra* section III.E.3, Plaintiffs have not presented any evidence that Defendants made a misrepresentation. Since the Court found that Defendants could reasonably conclude that Plaintiffs' claim was not covered by the Policy, Defendants did not make a false representation or a positive assertion recklessly without knowledge of the truth in denying Plaintiffs' claim. Where a claim for fraud fails, a fraud based conspiracy claim must also fail as a matter of law. *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 798 (N.D. Tex. 2009) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) (granting summary

judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanse v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also")). In addition, Plaintiffs have not presented any evidence that Defendants agreed with one another to commit fraud. As the Court has already explained, to the extent Plaintiffs needed more time for discovery on these points, it was incumbent on the Plaintiffs to request a continuance before the discovery and dispositive motion deadlines passed. Plaintiffs cannot rely on the conclusory allegations in their pleadings that Defendants conspired. See *Lockett*, 337 F. Supp. 2d at 891.

## IV.     Plaintiffs' Motion to Compel Depositions

On November 29, 2011, Plaintiffs filed their Motion to Compel the Depositions of Dwight Powell, Cindy Amzibel, Jeff Baker, and Corporate Representative from Bass Underwriters, Inc. in Texas. Dkt. No. 33. Plaintiffs request the Court compel these individuals to appear for depositions in Texas. Plaintiffs aver that they have attempted throughout the months of October and November to agree to depositions dates and locations but were unable to do so. On December 5, 2011, Defendants filed their response arguing that Plaintiffs' motion should be denied.

The Court reminds the parties, once again, that the Court's Scheduling Order provides that "[c]ounsel may agree to continue discovery beyond the deadline, but there will be no intervention by the court." Dkt. No. 8. The parties have agreed among themselves to continue discovery beyond this Court's discovery deadline. The Court declines to become involved in the parties' disagreements over deposition dates, times, and locations. Therefore, the Court **DENIES AS MOOT** Plaintiffs' Motion to Compel, Dkt. No. 33.

## V.     Conclusion

Based on the foregoing, the Court **DENIES** Defendants' Motion to Strike Plaintiffs' Expert Witnesses, Dkt. No. 24, **GRANTS** Plaintiffs' Motion for Leave to File Amended Expert Designation, Dkt. No. 29, **GRANTS** Plaintiffs' second Motion for Leave to File Amended Expert Designation, Dkt. No. 31, and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, Dkt. No. 25. The Court **DENIES** Plaintiffs' request for a continuance. The Court **GRANTS** Defendants' Motion for Summary Judgment as to the following claims:

(A) Breach of contract against Defendants ICAT and Bass only;

(B) Breach of the duty of good faith and fair dealing and violations of Texas Insurance Code §§ 541.060(a)(2)(A) and (a)(7) against all Defendants;

(C) Violations of Texas Insurance Code §§ 541.060(a)(1), (a)(3), and (a)(4) and violations of Texas Insurance Code, Prompt Payment of Claims §§ 542.055 and 542.056 against all Defendants;

(D) Violations of Texas Insurance Code, Prompt Payment of Claims § 542.058 against Defendants ICAT and Bass only; and

(E) Fraud and conspiracy to commit fraud against all Defendants.

The Court further **DENIES AS MOOT** Plaintiffs' Motion to Compel, Dkt. No. 33.

DONE at Brownsville, Texas, December 14, 2011.

Hilda G. Tagle
United States District Judge